1

2

3

4

5

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

6

CARMELA A. WILDCAT,

7

Plaintiff,

8

v.

9

CAROLYN W. COLVIN[1],
Commissioner of Social Security,

10

Defendant.

11

NO.  CV-12-0030-JLQ

MEMORANDUM OPINION AND
ORDER RE:  MOTIONS FOR
SUMMARY JUDGMENT

12    Plaintiff appeals the final decision of the Commissioner of the Social

13  Security Administration ("Commissioner") which denied her application for

14  Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"),

15  after a hearing before an administrative law judge ("ALJ").

16    Before the court are Cross-Motions for Summary Judgment.  (ECF Nos. 10,

17  15).  Plaintiff is represented by attorney Lora Lee Stover.  Defendant is

18  represented by Assistant United States Attorney Pamela DeRusha and Special

19  Assistant United States Attorney Jessica Milano.  Jurisdiction to review the

20  Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

21  For the reasons set forth below, the Commissioner's decision is Affirmed.

22

23

24    [1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on

25  February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,

26  Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this suit.

27  No further action is necessary to continue this action by reason of the last sentence
     of 42 U.S.C. § 405(g).

28

## I.  BACKGROUND

### A.    Procedural History

On March 2, 2009, Plaintiff applied for Disability Insurance Benefits and Supplemental Social Security Income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–433 and §§ 1381–1383c. (Tr. 144-154). Plaintiff alleged disability with an onset date of June 22, 1996, due to a back injury and concussion.  (Tr. 171). Plaintiff's applications were denied initially on July 20, 2009 and upon reconsideration on February 19, 2010 (Tr. 100).  Plaintiff requested an administrative hearing which took place on November 2, 2010 before ALJ Caroline Siderius.  (Tr. 38-87).  At the hearing, Plaintiff amended her date of alleged onset to July 2007.  On January 12, 2011, the ALJ issued her decision finding Plaintiff not disabled. (Tr. 18-37). Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council (Tr. 1-7), making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On January 6, 2012, Plaintiff timely filed the present action challenging the Commissioner's decision. (ECF No. 1).

### B. Sequential Evaluation Process

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a claimant shall be determined to be under a disability only if the  impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process

for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920;
*Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987):

Step 1: Is the claimant engaged in substantial gainful activities?  20 C.F.R.
§§ 404.1520(b), 416.920(b).  If she is, benefits are denied.  If she is not, the
decision maker proceeds to Step 2.

Step 2: Does the claimant have a medically severe impairment or
combination of impairments?  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the
claimant does not have a severe impairment or combination of impairments, the
disability claim is denied.  If the impairment is severe, the evaluation proceeds to
the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed
impairments acknowledged by the Commissioner to be so severe as to preclude
substantial gainful activity?  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt.
404 Subpt. P App. 1.  If the impairment meets or equals one of the listed
impairments, the claimant is conclusively presumed to be disabled.  If the
impairment is not one conclusively presumed to be disabling, the evaluation
proceeds to Step 4.

Step 4: Does the impairment prevent the claimant from performing work she
has performed in the past?  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant
is able to perform her previous work, she is not disabled.  If the claimant cannot
perform this work, the inquiry proceeds to the Fifth and final Step.

Step 5: Is the claimant able to perform other work in the national economy
in view of her age, education and work experience?  20 C.F.R. §§ 404.1520(f),
416.920(f).

The initial burden of proof rests upon the Plaintiff to establish a prima facie
case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921
(9th Cir. 1971).  The initial burden is met once a claimant establishes that a
physical or mental impairment prevents her from engaging in her previous

occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**C. Factual Background**

The facts are contained in the medical records, administrative transcript (ECF No. 7)("Tr."), and the ALJ's decision, and are only briefly summarized here.

Plaintiff was born in 1968 and was 42 years old at the time of the administrative hearing. She has a high school education and completed two years of studies in auto mechanics (but did not graduate or obtain a license), as well as vocational training in forklifting, flagging, blueprinting, and a CDL driving class. (Tr. 180). She was 5'5" tall and weighed 210 pounds.  Her past work experience includes positions as a bus driver, teacher's aide, house cleaner, usher, parking lot attendant and flagger.  She has four children whom she lives with and cares for. She testified that on a normal day she transports her children to and from school, cleans house, goes grocery shopping, and beads key chains and necklaces.

In 1996, Plaintiff sustained an on–the-job injury while loading cherries when she was pinned by the corner of a steel box, resulting in a bruised back. (Tr. 50-52).  She also testified that she attributes some of her pain due to a 2006 motor vehicle accident and having had a MRSA infection in her hand.  (Tr. 54-57). Plaintiff testified that she could sit for "a good half an hour" and that she could stand an hour.  She testified that she has swelling in her feet and hands, which causes pain.  To relieve the pain in her hands she rubs them, uses heat, or pops her knuckles.

Plaintiff advised the ALJ at the time of the hearing that she was planning to see a rheumatologist and was awaiting results of her October 2010 x-rays.  The ALJ left the record open, and after the hearing the Plaintiff submitted records from Rockwood Clinic (Tr. 643-698), Native Health (Tr. 705-708) and Holy Family

Hospital (Tr. 699-704).

**D. Commissioner's Findings**

The ALJ presumed at Step 1 that Plaintiff had not engaged in substantial gainful activity since July 22, 1996, the alleged date of onset date in Plaintiff's application.  Though Plaintiff did work between 1996 and 2007, the ALJ found it unnecessary to address the Plaintiff's onset amendment to July 1, 2007 as she found her not disabled.  At Step 2, the ALJ determined that Plaintiff has the following severe impairments: chronic back pain, left knee degenerative joint disease, obesity, asthma, diverticulitus, diabetes mellitus, painful bladder, plantar fasciitis, and a right 5th toe melanocytic nevus (mole). (Tr. 23).  The ALJ found there was a lack of evidence of any mental work-related functional limitations. Though Plaintiff testified she considered herself "to be a depressed person,"  the ALJ found that Plaintiff's depression, as well as her concussion, were "non-severe" in nature. (Tr. 26).

At Step 3, the ALJ determined that the Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 CFR Pt. 404 Subpt. P App 1 (Listings).

At Step 4, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with the following restrictions: she is only able to lift and/or carry up to 10 pounds, either frequently or occasionally; she can be expected to stand and/or walk up to 4 hours in an 8-hour day and can be expected to sit up to 6 hours in an 8-hour day if allowed a sit/stand option; she can only occasionally stoop, kneel, crouch, crawl, balance and climb ramps or stairs; she cannot climb ladders, ropes or scaffolds; and she should "avoid odors, dusts, fumes, gases, poor ventilation, etc., and vibrations."  (Tr. 27).

The ALJ found Plaintiff's statements regarding the severity of her impairments not entirely credible, to the extent they conflicted with the ALJ's residual functional capacity assessment.  Specifically, in making this credibility

finding the ALJ pointed to the Plaintiff's statements of non-compliance with prescribed treatment for pain, the lack of significant pain regiment or therapy program, her testimony regarding her activities of daily living, the lack of objective medical evidence or statements of a physician as to severe unremitting pain or limitations, and the lack of further medical attention in anticipation of any further surgery. (Tr. 29-30).

At Step 4, the ALJ found that based upon the hypothetical posed to the vocational expert, Plaintiff was unable to perform any past relevant work as a bus driver, teacher's aide, housekeeping cleaner, general clerk, usher, parking lot attendant or flagger. At Step 5, based on the further testimony of the vocational expert, the ALJ concluded that Plaintiff could perform other work existing in the national economy including jobs such as cashier, telemarketer, and assembly worker (jewelry). Accordingly, the ALJ concluded that Plaintiff was not disabled, as defined by the Social Security Act, from June 22, 1996 through the date of the decision, January 12, 2011.

## II. STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the [Commissioner] applied the proper legal standards." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of

the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).    This court may set aside a denial of benefits only if the basis for denial is not supported by substantial evidence or if it is based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is the role of the trier of fact, not this court, to resolve conflicts in the evidence. *Richardson*, 402 U.S. at 400.  If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Thomas*, 278 F.3d at 954 (9th Cir. 2002).

**III. ISSUES**

The issue before the Court in this action for judicial review is whether the ALJ's decision is based on substantial evidence and is free of legal error.  Plaintiff seeks reversal of the ALJ's denial of benefits, arguing that:

1) The ALJ erred at Step 2 by failing to find "that Plaintiff's left arm and hand conditions, diagnosed as 'arthralgia,' are severe impairments";

2) The ALJ improperly assessed Plaintiff's RFC;

3) The ALJ improperly assessed Plaintiff's credibility;

4) The ALJ erred by failing to properly consider Exhibits 25 and 26; and

5) The ALJ's decision is not supported by substantial evidence.

(ECF No. 11 at 7).

**IV. DISCUSSION**

**A. Step 2 and Exhibits 25F and 26F**

Plaintiff first argues the ALJ erred by failing to classify her "arthralgia" as severe, and that this constitutes "harmful, reversible error." (ECF No. 11 at 12). Specifically, Plaintiff's Motion alleges the Plaintiff's testimony supports an "inability to use her hands" (ECF No. 11 at 3-4), and that the ALJ should have determined Plaintiff's left arm and hand arthralgias were severe.  For support, Plaintiff points to Exhibit 25F and 26F, which include x-ray results and records from Rockwood Clinic for a rheumatology assessment, and surmises that the ALJ did not review Exhibits 25F and 26F, submitted after the hearing.

At Step 2 of the sequential process, the ALJ must determine whether Plaintiff suffers from a "severe" impairment, i.e., one that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). To satisfy Step 2's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; <u>the claimant's own statement of symptoms alone will not suffice</u>. 20 C.F.R. § 416.908. The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations. *See, e.g., Edlund v. Massanari*, 253 F.3d 1152, 1159–60 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989); *Key v. Heckler*, 754 F.2d 1545, 1549–50 (9th Cir.1985).

Even where non-severe impairments exist, these impairments must be considered in combination at Step 2 to determine if, together, they have more than a minimal effect on a claimant's ability to perform work activities. 20 C.F.R. § 416.929. If impairments in combination have a significant effect on a claimant's ability to do basic work activities, they must be considered throughout the sequential evaluation process. *Id.* "[M]edical evidence alone is evaluated in order to assess the effects of the impairments on ability to do basic work activities." S.S.R. 85–28. Thus, in determining whether a claimant has a severe impairment, the ALJ must evaluate the medical evidence.

Plaintiff supports her argument by pointing out instances in the medical record showing that Plaintiff "had complaints of pain..." and where tenderness was noted upon physical examination. However, this is not sufficient to demonstrate the presence of a severe impairment. Indeed, aside from Plaintiff's own descriptions of the alleged effects caused by the condition, Plaintiff has offered no objective medical evidence or physician's report tending to establish that a condition in Plaintiff's left arm and hands causes any functional limitations, much

less limitations that somehow inhibit Plaintiff from working.

     The record does show that at times, medical providers assessed Plaintiff has having "joint pain," "arthritis" (Tr. 509), or "arthralgia" (Tr. 548, 636, 653). Exhibits 25F and 26F evidence that in May 2010, Plaintiff was referred to a rheumatologist by Franklin Park Urgent Care for an assessment and treatment of her generalized complaints of aches or pain in her joints.  On September 20, 2012, Plaintiff saw rheumatology specialist, Margaret Collyer, ARNP, and reported that she has had musculoskeletal pain since 1997 and hurting "shoulders, elbows, back, neck, toes, hip, and other areas."  On examination, Ms. Collyer's note indicates Plaintiff was "tender everywhere," however, Ms. Collyer found that Plaintiff's "degree of pain on palpation" was "somewhat exaggerated due to the clinical findings".   On October 26, 2010, Plaintiff returned for a follow up with Ms. Collyer, claiming to have "10/10 pain" stemming primarily from her foot which had a plantar wart.  Ms. Collyer concluded after this visit that while Plaintiff "certainly has areas of degenerative changes...I have yet to see an area of true inflammation." (Tr. 656).  Plaintiff's lab test results were negative for antinuclear antibodies, rheumatoid factor, and anti-CCP antibodies. (Tr. 654).  Ms. Collyer also ordered x-rays of Plaintiff's feet, knees, spine, and both hands, which were all negative except for minimal degenerative changes of the cervical spine.  A full body bone scan performed the same day was negative. (Tr. 673). Ms. Collyer concluded on November 9, 2013 that she does not see "compelling evidence of an autoimmune arthropathy,"

     Plaintiff's contention that the ALJ did not consider these records is not supported by the record as Exhibits 25F and 26F are repeatedly cited throughout the ALJ's opinion.   Though the ALJ did not discuss Plaintiff's complaints in terms of an "arthralgia," the ALJ specifically addressed Plaintiff's "joint problem" and provided ample support in finding which of Plaintiff's impairments were severe and which were non-severe.  The ALJ's decision specifically noted

Plaintiff's complaints of pain in her hands and wrists:

> [T]he claimaint has recently alleged disability due to joint problems involving both of her wrists and hands. The medical evidence however shows that both left and right wrist and hand x-ray studies are entirely normal...Seriologic studies including an ANA titer and Rheumatoid Factor have been negative...These studies negate the presence of rheumatoid arthritis or any other bony destructive process.

(Tr. 25). The ALJ then note that she left the record open after the hearing, but that "no further medical evidence related to these or her other complaints has altered the RFC as stated in this opinion." (Tr. 25). Thus, while the ALJ did not specifically determine Plaintiff's joint paint to be a severe impairment, she still explicitly considered the combination of all of Plaintiff's impairments in her analysis, and indeed, Step 2 was resolved in Plaintiff's favor. The ALJ did not err in determining that the medical evidence did not support the existence of a severe impairment related to Plaintiff's left arm and hands.

**B. Credibility**

Plaintiff briefly argues that the ALJ failed to properly evaluate the credibility of Plaintiff's symptom testimony. The extent of Plaintiff's challenge to the ALJ's credibility finding is a single paragraph alleging: "[T]here is lab work which corroborates Plaintiff's pain complaints. The Plaintiff testified that she suffers from symptoms which interfere with her ability to sustain work...If the evidence had received proper weight, the Plaintiff should have been found to be entitled to benefits." (ECF No. 11 at 13-14).

 Credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); SSR 96–7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281–82; SSR 96–7p. Once a

claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir.1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; Reddick, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.1997). In addition, the ALJ may consider the dosage and effectiveness of any treatment or pain medication for relief of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir.1991).

The ALJ's opinion thoroughly discussed Plaintiff's subjective complaints, including her testimony regarding her hand and arm problems (Tr. 28-29). Ultimately, the ALJ provided a number of specific reasons for finding the Plaintiff's complaints of disabling pain were out of proportion to the other evidence in the record.  Notably, the veracity of Plaintiff's subjective complaints of pain had been called into question as "exaggerated" by ARNP Collyer. In assessing Plaintiff's credibility regarding her pain, the ALJ observed that Plaintiff had testified she could spend upwards of two or more hours a day doing beadwork.  Moreover, the ALJ found Plaintiff's many physical evaluations revealed only minor joint puffiness and tenderness, minimal findings on objective

testing, and never suggested significant motor deficits.  The ALJ also determined that Plaintiff had not participated in any significant pain management regimen or "medical 'work-up' in anticipation of any further surgery."  (ECF No. 7 at 30). The fact there was no statements or observations by Plaintiff's physicians that she experiences severe and unremitting pain or limitations that would preclude sedentary work, further support the ALJ's credibility finding.

The ALJ articulated specific, clear, and convincing reasons for partially rejecting Plaintiff's subjective testimony.

**C. Residual Functional Capacity**

Finally, Plaintiff contends states that she "takes issue with the Defendant's assessment of her residual functional capacities." Despite Plaintiff's lack of any meaningful analysis as to the RFC, it is apparent that Plaintiff's position is that Plaintiff fits within the third hypothetical posed by the ALJ to the vocational expert at the administrative hearing.  In responding to this hypothetical question posed by the ALJ, the vocational expert acknowledged that with a limitation of "only occasional handling and manipulating with the left nondominant hand" it would eliminate an individual from performing any kind of unskilled sedentary job. (Tr. 83-84).

Ultimately, the ALJ's RFC finding did not take into account any functional restrictions in Plaintiff's ability to manipulatively use her hands or left arm. However, the ALJ restricted her RFC to sedentary level of work, which mostly involves sitting, and imposed other significant restrictions including a 10 pound lifting restriction.  The ALJ properly discounted Plaintiff's credibility concerning disabling pain and the ALJ's RFC is  supported by substantial evidence.   As the ALJ's opinion notes, the medical evidence shows normal x-rays, normal bone scans, and negated the presence of rheumatoid arthritis. Plaintiff contends corroboration of her complaints of pain in her left arm and hands are found in August 2008 lab test results detecting an elevated sedimentation rate and positive

for antinuclear antibodies (Tr. 433, 444).  However, the conclusion from Plaintiff's most recent rheumatology lab testing and evaluation was that despite these results, there was no compelling evidence of autoimmune disease. Reviewing the record as a whole, Plaintiff's 2008 lab test results do not require a finding of any functional limitations in Plaintiff's arm and hands.

This court's factual and legal review is limited. If there is evidence in the record to support the ALJ's conclusion, and the ALJ applied the correct legal standards, this court must affirm the ALJ's decision. This court may not reinterpret or re-evaluate the evidence however much a re-evaluation may reasonably result in a favorable outcome for Plaintiff. *See Batson v. Barnhart*, 259 F.3d 1190, 1193 (9th Cir. 2004)(where evidence is susceptible to more than one reasonable interpretation, the agency's decision must be upheld). The court determines that substantial evidence in the record supports the ALJ's decision.

### VIII. CONCLUSION

The ALJ properly evaluated Plaintiff's impairments and provided legally sufficient reasons for partially discrediting Plaintiff's testimony. The Commissioner's decision that Plaintiff is not disabled was supported by substantial evidence in the record and is therefore **AFFIRMED**.

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (**ECF No. 10**) is **DENIED**.

2. Defendant's Motion for Summary Judgment (**ECF No. 15**) is **GRANTED.**

3. The Clerk is directed to enter Judgment dismissing the Complaint (ECF No. 1) and the claims therein with prejudice.

1    **IT IS SO ORDERED**.  The District Court Executive is directed to file this

2    Order, enter Judgment as directed above, and **close this file**.

3

4        DATED this 23rd  day of April, 2013.

5
                                s/ Justin L. Quackenbush
6                               JUSTIN L. QUACKENBUSH
                            SENIOR UNITED STATES DISTRICT JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28